**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| DOLORES ALBERTO, | § | Civil Action No. _____ |
| Plaintiff, | § | |
| | § | **PLAINTIFF'S ORIGINAL COMPLAINT** |
| vs. | § | |
| THE UNITED STATES OF AMERICA, | § | |
| Defendant. | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| _____ | § | |

TO THE HONORABLE DISTRICT COURT:

COMES NOW, Dolores Alberto, Plaintiff, by and through her attorneys, William Schwitzer & Associates, P.C., and files this Complaint against the United States of America, and for causes of action alleges the following:

**NATURE OF THE ACTION**

1.     In May of 2016, the United States of America, through the Department of Health & Human Services, provided funding to medical clinics throughout the United States in areas where the resident population is underserved by private medical care. In May of 2016, Defendant specifically provided funding to the "Sunset Park Family Health Center," a clinic associated with NYU Lutheran Medical Center, located in the "Sunset Park" section of Brooklyn, State of New York. Physicians that practice at the "Sunset Park Family Health Center" enjoy immunity from suit pursuant to the Federally Supported Health Centers Assistance Act of 1992 and 1995 for any

malpractice that may be committed while providing medical care at a federally funded clinic. Plaintiff brings the present action alleging, *inter alia*, negligence during the laparoscopic hysterectomy performed by Ernesto Rodriguez-Dumont, M.D. on May 12, 2016 at NYU Lutheran Medical Center, Brooklyn, New York pursuant to 28 U.S.C. §1346(b). Such acts of negligence alleged herein did not occur within the confines of the "Sunset Park Family Health Center," but within NYU Lutheran Medical Center.

## JURISDICTION & VENUE

2.      The present action arises under the laws of the United States of America and the State of New York. The Honorable District Court has jurisdiction over this matter pursuant to 28 U.S.C. §1346(b), 28 U.S.C. §2401(b) and 28 U.S.C. §§2679-81, *et seq*. because the Defendant is the United States of America, by its agents, servants and employees, both actual and ostensible. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §1402(b) because a substantial part of the events or omissions giving rise to this claim occurred in this district; to wit, Plaintiff resides in this district and the medical care made the basis of the present action, and the alleged tortious acts, occurred in this district.

## CONDITIONS PRECEDENT

3.      Pursuant to 28 U.S.C. §2675(a), written notice of an administrative claim was timely sent via certified mail, return receipt requested, to Defendant through the Department of Health & Human Services  at least six (6) months prior to the present action. On or about March 16, 2017, Defendant sent written notice to Plaintiff that her administrative claim was denied. Plaintiff now files the present action pursuant to 28 U.S.C. §2401(b).

## THE PARTIES

4.     Plaintiff Dolores Alberto is an adult under no legal disability, and resides at 725 6th Avenue, Apt. 1S, Brooklyn, County of Kings, State of New York 11215.

5.     The Department of Health & Human Services is a duly authorized agency of the Defendant with authority to fund and/or provide health care. Upon information and belief, Defendant United States of America provided funding to the "Sunset Park Family Health Center" located in the Sunset Park section of Brooklyn, State of New York. Upon information and belief, the "Sunset Park Family Health Center" is a "Community Health Center" funded under Section 330(e) of 42 U.S.C. §245b (Public Health Services Act). Service of process may be had upon the Defendant by serving the United States' Attorney, Hon. Bridget M. Rohde, 271 Cadman Plaza East, Brooklyn, New York 11201, and the Attorney General of the United States, Hon. Jeff Sessions, at the Department of Justice, 10th and Constitution Avenue, N.W., Room 4400, Washington, D.C. 20530.

## RELEVANT FACTS

6.     At all times material hereto, Plaintiff Dolores Alberto was approximately 41 years old and resided in Brooklyn, New York. Her relevant medical history included hypertension (diet controlled), non-insulin dependent diabetes mellitus, leiomyoma of the uterus (uterine fibroid(s)), iron deficiency anemia, and excessive menorrhagia. Plaintiff had an obstetrical history of 4 pregnancies, with 3 deliveries (2 by cesarean section) and 1 miscarriage.

7.     At all times material hereto, Plaintiff was a recipient of New York State Medicaid benefits administered by Empire Blue Cross/Blue Shield.

8.     At all times material hereto, Ernesto Rodriguez-Dumont, M.D. was duly licensed as a physician in the State of New York and maintained a principal place of business at 5610 2nd Avenue, Brooklyn NY 11220-3599; and held himself out to the general public as a specialist in

the fields of Obstetrics & Gynecology.

9.    At all times material hereto, Ernesto Rodriguez-Dumont, M.D. was not acting within the course and scope of his employment at the "Sunset Park Community Health Center" when he performed a laparoscopic hysterectomy on Plaintiff at the NYU Lutheran Medical Center on May 12, 2016.

10.    At all times material hereto, Ernesto Rodriguez-Dumont, M.D. was not protected from suit pursuant to 28 U.S.C. §1346(b), 28 U.S.C. §2401(b) and 28 U.S.C. §§2679-81, *et seq*. for any negligence when he performed a laparoscopic hysterectomy on Plaintiff at the NYU Lutheran Medical Center on May 12, 2016.

11.    At all times material hereto, Ernesto Rodriguez-Dumont, M.D. was not a "Covered Individual" pursuant to the Federally Supported Health Centers Assistance Act of 1992 and 1995 for any negligence when he performed a laparoscopic hysterectomy on Plaintiff at the NYU Lutheran Medical Center on May 12, 2016.

12.    At all times material hereto, NYU Lutheran Medical Center was not a "FTCA Covered Entity" pursuant to the Federally Supported Health Centers Assistance Act of 1992 and 1995.

13.    On or about May 12, 2016, Plaintiff Dolores Alberto was admitted to NYU Lutheran Medical Center, located at 150 55th Street, Brooklyn, New York 11220, for a scheduled "total" hysterectomy procedure. The term "total hysterectomy" generally refers to the surgical removal of the uterus, cervix and fallopian tubes. The ovaries are retained for hormonal production.

14.    Before the hysterectomy procedure was performed, it was intended to be an "ambulatory surgery," ie., the patient would return home shortly after the procedure. Within Plaintiff's records from NYU Lutheran Medical Center there is a multi-page document entitled "Perioperative Report." The "Perioperative Report" states the following, in part:

Case/Anesthesia Information
Anesthesia Type:          General
Surgery Type:          Elective
Patient Status:         AS
Service:         Gynecology
Site:         Main Operating Room
ASA:         3. Severe Systemic

Procedures:
Intra-op
Primary Procedure:     Laparoscopic Abdominal Hysterectomy
Primary Surgeon Description:     Laparoscopic Total Hysterectomy
Primary wound class:     1. Clean
Service:     Gynecology
Primary Procedure:     Salpingectomy
Primary Surgeon Description:     Bilateral salpingectomy
Primary wound class:     1. Clean
Service:     Gynecology

Diagnosis:
Preop
Fibrotic uterus, Menorrhagia     Bilateral salpingectomy
     Abnormal Pap Smear

Intra-Op
Fibrotic uterus, Menorrhagia     Laparoscopic total hysterectomy
     Abnormal Pap Smear
Fibrotic uterus, Menorrhagia     Laparoscopic total hysterectomy
     Abnormal Pap Smear
Fibrotic uterus, Menorrhagia     Bilateral salpingectomy
     Abnormal Pap Smear

The indication(s) for the hysterectomy procedure was "fibroid uterus, menorrhagia and abnormal pap smear."  The report further indicated she had no history of tobacco, alcohol or drug abuse; that she was approximately 5'4 " in height and weighed 81.7 kilograms (~180lbs).

15.    The "Peri Operative Report" further indicates that the Plaintiff was placed in the "lithotomy" position for the surgery with her "…arms both tucked at sides. Head supported on folded sheets.  Legs supported in gel padded Allen stirrups. Proper body alignment maintained. Venodyne stockings." The "lithotomy" position is used in numerous gynecologic or pelvic

surgeries and is where the patient is on their back with their knees flexed towards their chest and supported in stirrups placed by the operative team.

16.     The "Peri Operative Report" also indicates that the Plaintiff arrived at the facility at 0924; the "Preop Care Event" started at 1050 and ended at 1118 for a duration of 29 minutes; and the anesthesia start at 1318 and stop of 1707 for a duration of 223 minutes.  It also indicates the actual surgery began at 1403 and ended at 1653 for a total duration of 173 minutes.

17.     Present during the pre-operative period, hysterectomy, and immediate post-operative period was: Ernesto Rodriguez-Dumont, M.D. (surgeon), Alexis Tuck, M.D. (assistant surgeon/resident), Lisa Amendolia, M.D. (anesthesiologist), Sharon Murillo, M.D. (anesthesiologist), Mann Hasandeep, M.D. (anesthesiologist/resident), Sarah Hafeez (medical student),  Janice Barlatier, CRNA, Valerie Haskell, R.N., Alexis Vega, R.N., Anna Pawlyk, R.N., Lloyd Crosdale, ORT, and Sandryn Napoleon, ORT.

18.     The "Operative Report" concerning the hysterectomy procedure made the basis of this suit was electronically signed by Ernesto Rodriguez-Dumont, M.D. on May 27, 2016. It states the Attending Surgeon was Ernesto Rodriguez-Dumont, M.D. and the Assistant Surgeon as "Dr. Tuck." Both "Preoperative Diagnoses" and "Postoperative Diagnoses" are listed as:

>   Leiomyoma of uterus
>   • Intramural (D25.1)
>
>   Iron deficiency anemia
>   • Secondary to blood loss (chronic)(D50.0)
>
>   Excessive menorrhagia
>   • With regular cycle (N92.0)

The "Procedure Performed" is stated as:

>   Laparoscopic total hysterectomy, for uterus greater than 250g; with salpingectomy (58573)
>       • Bilateral

The "Findings" is stated as:

> 16wk size anteverted uterus globular in shape. Normal tubes and ovaries.

The "Technique" is stated as follows:

> Prior to the procedure, the risks, benefits and alternatives were discussed and the patient agreed to proceed. Following anesthesia, the patient was placed in the lithotomy position. Prepping and draping was performed under sterile conditions. A time-out was done.

> A foley was placed prior to the beginning of the procedure. A right angle and SIMS retractor was placed into the vaginal to expose the anterior lip of the cervix which was grasped with a tenaculum. A v-care was placed to manipulate the uterus. Turning our attention to the abdomen, a small intraaumbilical incision was made and the abdomen entered using the Veress needle. When entry into the abdomen was confirmed, the abdomen was insufflated using carbon dioxide gas. A 5mm laparoscope was inserted with findings as previously mentioned. Under direct visualization, additional ports were placed. 5mm ports in the Left and Right lower quadrants. Fallopian tube bilaterally resected using Ligasure. The round and uteroovarian ligaments bilaterally were ligated using the Ligasure. The broad ligament was taken down to the bladder reflection anteriorly; the posterior broad ligament was taken down up to the uterosacral ligaments. The uterine arteries were then electrocoagulated with the bipolar and then ligated with the Ligasure. The vagina was incised on the edge of the vcare cup. The uterus and cervix were morcellated and delivered vaginally using alexis retractor. The vaginal cuff was closed vaginally.

> The pelvis was irrigated and then examined for hemostasis. All ports were removed and puncture sites were seen to be hemostatic. The abdomen was desufflated. Skin incisions were closed with 4-0 vicryl. Sterile dressings applied.

> The patient tolerated the procedure well. Patient was awakened from anesthesia and taken to the PACU in stable condition.

"Disposition" is stated as follows:

> The patient tolerated the procedure well without any complications.
> Stable to recovery room.

"Complications" is stated as:

> No complications were noted.

19.     A "ureter" is the anatomic, muscular duct by which urine passes from each kidney to the

bladder. The ureter is divided anatomically into two major components – abdominal and pelvic – with lengths ranging from 12 to 15 cm each. The ureter is found <1.5 cm lateral to the cervix, passing under the uterine artery and then medially over the anterior vaginal fornix before entering the trigone of the bladder.

20.     The word "ureter" does not appear in the Operative Report of plaintiff's hysterectomy performed by Ernesto Rodriguez-Dumont M.D. on May 12, 2016.

21.     The performance of a laparoscopic hysterectomy, in May of 2016, did not involve either ureter as part of the procedure, and they are not part of the operative field.

22.     At approximately 0624 hours on May 13, Andrew Carfield, M.D., a resident physician, wrote an "Overnight Event" note stating, in part: "41F w/ hx of HTN, DM, Anemia s/p BAH BSO POD#1. Patient with no acute events overnight. Patient still in PACU because she has failed to void." The treatment plan included "Continue pain control. Place urinary catheter if patient continues to fail to void. Once patient voids, plan discharge home."

23.     On or about May 13, 2016 at 1048 hours, Plaintiff was discharged to home from NYU Lutheran Medical Center after she had passed urine.

24.     On or about May 16, 2016 at 1054 hours, Plaintiff Dolores Alberto went to the Emergency Room of NYU Lutheran Medical Center. The "ED Visit Note" states she arrived because of "…Chief Complaint: pain to surgical site…" and "…walked in c/o lower abdominal pain. s/p hysterectomy 3 days ago."  Further, it states "…Onset of symptoms: 3 x days…" and "…Pain 10/10…" A further Emergency Room note elaborates further, stating:

> Chief Complaint: Right Flank Pain
> HPI: 41yo F pmh dm, htn, anemia, s/p laparoscopic tah/bso (5/12/16) presents with right flank and abdominal pain x 3 days. Abd pain is diffuse, b/l, nonradiating, constant, assoc with nbnb vomiting each morning. No bm for last 3 days, has been passing flatus ok. Patient has been able to tolerate small amounts of food. Denies f/c, cp/sob, diarrhea, dysuria, urinary retention, vaginal

discharge/bleeding. Pt has been taking Percocet and ibuprofen with no relief. Operation was done here.

The Emergency Department "Physical Note" includes the following:

Genitourinary Female:  + Right CVA tenderness to palpation.

The Differential Diagnosis & Plan is the following:

DD x 1: obstruction vs. surgical complication vs. normal post-op course
DD x 2:
Plan:
-labs
-pain control
-U/A
-monitor
-reassess
/es/ Robert S. Brian 5/16/2016 6:02 pm

25.    An Emergency Department "Progress Note" states the following:

Spoke with gyn over the phone. R hydronephrosis on CT, unable to fully assess the R ureter. Repeat CT w/o contrast requested by radiology to better visualize ureter.
Pt still in pain despite morphine.  Now also having R CVA tenderness.
-CT abd/pelv w/o contrast
-urology consult
/es/Song, Peter, 5/16/2016 5:05 pm

On or about May 17, 2016 at 11:27 am, Marc Bjurlin, D.O., an urologist, became involved in

Plaintiff's care at NYU Lutheran Medical Center. His note states as follows:

Seen and examined
Labs, vitals, outputs imaging reviewed
PMHx, Surghx, Meds, All, Social, Family per note
Agree with PA ROS
A and O
NAD
Neck supple
Nonlabored breathing
Abd soft mild tenderness at surgical site
No RRG
Foley clear urine
No LAD
No cce

> Will plan for cystoscopy, ureteroscopy, retrograde pyelogram to deline possible ureteral obstruction, If obstructed, will plan for stent placement if possible.

Dr. Bjurlin performed a cystoscopy and a right retrograde ureterogram on Plaintiff at approximately 12:31 pm on May 17, 2016. His findings were notable for:

> "Obstructed right distal ureter with contrast extravasation."

In this context, "extravasation" means leakage; i.e., the imaging media leaked out of the ureter indicating it was ruptured. Based upon this finding, Dr. Bjurlin recommended that an Interventional Radiologist place a right nephrostomy tube and attempt to stent the right ureter. His recommendation goes on to say "…Will plan for right robotic ureteral reimplant in 2-3 months after inflammation resolves." A "nephrostomy" is a surgical diversion of kidney urine output from the bladder to an artificial opening in the skin. A ureteral "stent" is a tube placed in the ureter to treat an obstruction.

26.     On or about May 18, 2016 at 7:29 pm, an interventional radiologist became involved in Plaintiff's care. Huntz Liu, M.D. wrote an "Interventional Radiology Attending Progress Note" stating the following, in part:

> Interventional Radiology Pre-Procedure Note
>
> Requested Procedure: Right PCN
>
> History: S/P Right ureteral injury during Lap Hysterectomy. Retrograde stent attempt yesterday unsuccessful.
>
> Imaging reviewed: CT
>
> Impression: Retention of the IV contrast from the prior study noted in the right kidney cortex. Mild right hydronephrosis and hydroureter. The contrast seen in the right ureter up to the level of the mid pelvis adjacent to the pelvic collection. Findings again suggestive of obstruction or stricture at the distal right ureter could be due to extrinsic compression or post-operative stricture. The possibility of distal right ureter stone is less likely.

"PCN" is an abbreviation for percutaneous nephrostomy. Dr. Liu performed a right-sided percutaneous nephrostomy on the Plaintiff in the afternoon of May 18, 2016. Plaintiff was then required to affix a collecting bag to her body because urine from her right kidney was diverted through her abdomen instead of to her bladder. This procedure allows the ureter to recover from injury without urine irritation. Plaintiff remained at NYU Lutheran Medical Center until May 20, 2016 when she was discharged home.

27.     On or about May 25, 2016, Plaintiff Dolores Alberto returned to the Emergency Room of NYU Lutheran Medical Center. The admitting "OB/GYN Consult Note" by Anton Bogdanov, M.D. dated May 26, 2016 states the following:

> 41yo POD14 s/p TLH/bilateral salpingectomy for AUB & fibroids complicated by right ureteral transection, with nephrostomy tube placed 5/17 by IR on a readmission now represents with abdominal pain and fever at home of 100.5F. Pt denies dysuria, n/v/cp/sob. Admits to mild vaginal drainage, and mild back pain. In ER pt had fever 100.4F and received Vancomycin & Cefepime and had CT scan showing a possible 3-4cm pocket of fluid and gas suspicious for an abscess. On patient's previous admission, pt had findings of 8.6 x 6.3 cm collection in a similar area.

Also on May 25, 2016, an Infectious Disease specialist, Eslaamizaad Yasaman, M.D., became involved in Plaintiff's care. Dr. Yasaman's note of that date contains the following, in part:

> Assessment: Pelvic collection sp traumatic ureteral transection during hysterectomy sp instrumental intervention

Additionally, Sean Quaranta, M.D., an urologist, examined the Plaintiff on May 25, 2016, and wrote the following, in part:

Chief Urological Complaint:

> 41 year old female with history of laparoscopic hysterectomy/bilateral salpingectomy on 5/13/2016, subsequently had cystoscopy/RT RPG which found Rt ureteral injury at surgical site (stent could not be placed), pt subsequently had Rt PCN placed. Pt now presents to ED with 2-3 day history of lower abdominal/suprapubic pain. She also reports she is having low-grade fevers. She reports she is voiding without difficulty.

Dr. Quaranta concludes, in part:

> 41 year old female with iatrogenic Rt ureteral injury s/p Lap hysterectomy, now
> with UTI/cystitis and probably pelvic abscess – Case d/w Dr. Bjurlin.

The term "iatrogenic" means relating to illness caused by medical examination or treatment.
Plaintiff remained admitted to NYU Lutheran Hospital until May 31, 2016 while receiving
intravenous antibiotics.

28.     On or about June 26, 2016, Plaintiff returned to NYU Lutheran Medical Center with
complaints of a urinary tract infection, fever, chills and right flank pain. A urine culture showed
*Klebsiella pneumoniae*  bacteria in Plaintiff's urine. Plaintiff's *Klebsiella* infection was a
"Hospital Acquired" infection caused by contact with a contaminated object. Sensitivity testing
showed the bacteria to be resistant to several antibiotics. Physicians diagnosed Plaintiff as having
right-sided pyelonephritis. She remained in the hospital until June 28, 2016.

29.     On or about July 19, 2016, Plaintiff again returned to NYU Lutheran Medical Center with
complaints of a urinary tract infection, fever, chills and right flank pain. Once more, Plaintiff's
urine culture showed *Klebsiella pneumoniae*  bacteria in Plaintiff's urine. Physicians again
treated Plaintiff with antibiotics. During this admission, Ernesto Rodriguez-Dumont, M.D. again
became involved in Plaintiff's care. Dr. Rodriguez-Dumont authored a note dated July 21, 2016
where he states, in part:

> A/P: 42yo s/p TLH c/b right ureter transection now readmitted for 2nd time due to
> pyelonephritis, receiving IV antibiotic treatment.

Upon information and belief, the note states "42 year old status post total laparoscopic
hysterectomy complicated by right ureter transection..." The physicians at NYU Lutheran
Medical Center discharged Plaintiff on July 22, 2016.

30.     On or about August 3, 2016, Plaintiff underwent a robotic assisted ureter re-implantation with stent and nephrostomy removal at NYU Lutheran Medical Center. The procedure was performed by Mark Bjurlin, D.O., Plaintiff's treating urologist.  Plaintiff remained in the hospital until August 5, 2016 when she was discharged home with a Foley catheter in place.

31.     On or about August 15, 2016, Plaintiff returned to the Emergency Room at NYU Lutheran Medical Center with complaints of decreased urine output and abdominal/pelvic pain. The primary diagnosis was "…complicated UTI and pyelonephritis…" of her right kidney. Plaintiff remained in the hospital until August 18, 2016 to receive intravenous antibiotics.

32.     On or about September 23, 2016, Plaintiff again went the Emergency Room of NYU Lutheran Medical Center with complaints of a urinary tract infection, abdominal pain and blood in her urine. Urine culture performed that day showed elevated white blood cells and bacteria in her urine. Plaintiff was discharged in the morning of September 24, 2016 with instructions to follow-up with her urologist, Dr. Bjurlin.

33.     During Plaintiff's numerous admissions to the hospital, she received the following antibiotics to treat her pelvic abscess and/or urinary tract infection:  Clindamycin, Fluconazole, Metronidazole, Gentamycin, Cefepime, Meropenem, Ceftriaxone, and Vancomycin. In addition, throughout Plaintiff's treatment mentioned herein, she received various narcotic pain medications, including Morphine, Hydrocodone, Percocet and Codeine.

34.     Upon information and belief, Plaintiff continues to suffer from chronic pain, nephritis, urinary discomfort, incontinence, cystitis and recurrent, ascending urinary tract infections.

### AS FOR A FIRST CAUSE OF ACTION:  MEDICAL MALPRACTICE

35.     Plaintiff incorporates herein the allegations in paragraphs 1 through 34 as if set out in full.

36.     That at all times mentioned herein, Defendant United States of America, by and through its agents, servants and employees, both actual and ostensible, specifically Ernesto Rodriguez-Dumont, M.D., undertook to attend and provide gynecology, surgery and general medical services to Plaintiff Dolores Alberto, beginning on or about May 12, 2016, and continuing thereafter; and, had a non-delegable duty to provide such care to the Plaintiff in a reasonable and prudent manner, and pursuant to contemporary standards of gynecology, surgery and general medicine, and in accordance with Federal and State law.

37.     That at all times mentioned herein, Defendant United States of America, by and through its agents, servants and employees, both actual and ostensible, specifically Ernesto Rodriguez-Dumont, M.D., was negligent, and departed from standards of good and accepted gynecology, surgery and general medical practice, in its care and treatment of Plaintiff Dolores Alberto by the following:

    1)    Ernesto Rodriguez-Dumont, M.D. failed to ensure Plaintiff's right ureter was protected by dissecting the posterior leaf of the broad ligament laterally so as to create a space for the uterine artery to be ligated;

    2)    Ernesto Rodriguez-Dumont, M.D. failed to take cognizance of lateral thermal spread when using the LigaSure vessel sealing system to electrocauterize and ligate the uterine artery;

    3)    Ernesto Rodriguez-Dumont, M.D. failed to identify and visualize Plaintiff's right ureter while dissecting the broad ligament and transecting the ureter; and,

    4)    Ernesto Rodriguez-Dumont, M.D. failed to employ intra-operative cystoscopy to timely diagnose and treat Plaintiff's transected ureter.

Additionally, Defendant United States of America failed to properly train and supervise its agents, servants and employees in the provision of gynecology, surgery and general medical care to the Plaintiff.

38.     Under the laws of the State of New York, a private person would be liable to Plaintiff for

these acts and/or omissions of medical malpractice. Under 28 U.S.C. §2674, the United States of America is liable to Plaintiff for her damages resulting from the personal injuries delineated below.

39.    That as a result of the negligence and departures of the Defendant United States of America, its agents, servants and/or employees, whether taken singularly or in combination, the Plaintiff Dolores Alberto was caused to sustain serious, severe and permanent personal injuries, specifically the following: transected ureter; hydronephrosis; hydroureter; pelvic abscess; pyelonephritis; recurrent urinary tract infections; recurrent *Klebsiella* infections; recurrent vaginal drainage; recurrent gastro-intestinal distress due to various medications;  recurrent fevers; recurrent cystitis; need for medications not otherwise indicated including multiple antibiotics and narcotic pain medications; need for multiple surgeries not otherwise indicated including ureter re-implantation, cystoscopies, ureteroscopies, retrograde pyelogram(s) and ureteral stentings; need for nephrostomy not otherwise indicated; need for foley catheterization not otherwise indicated; need for multiple imaging studies not otherwise indicated; need for therapies not otherwise indicated; permanent chronic pain both in the past and continuing into the future; permanent suffering both in the past and continuing into the future; permanent scarring and disfigurement; permanent chronic mental anguish, embarrassment and loss of personal dignity both in the past and continuing into the future; permanent disability both in the past and continuing into the future; permanent need for assistance with activities of daily living both in the past and continuing into the future; permanent loss of enjoyment of life both in the past and continuing into the future; permanent sexual dysfunction and difficulty in life both in the past and continuing into the future; permanent painful and/or burning urination both in the past and continuing into the future; permanent incontinence and urinary urgency both in the past

and continuing into the future; and permanent sleep dysfunction due to pain and incontinence both in the past and continuing into the future.

40.     That as a result of the negligence and departures of the Defendant, its agents, servants and/or employees, whether taken singularly or in combination, the Plaintiff Dolores Alberto was caused to suffered economic damages, both in the past and continuing into the future, actually and proximately caused by the departures and negligence of the Defendant herein resulting in lien(s) (equitable or legal) and/or a "Right of Recovery" by private or governmental health insurance programs that paid for medical care on behalf of Plaintiff for injuries caused by the Defendants herein; specifically New York State Medicaid.

41.     That as a result of the negligence and departures of the Defendant, its agents, servants and/or employees, whether taken singularly or in combination, the Plaintiff Dolores Alberto was caused to suffer economic damages, both in the past and continuing into the future, actually and proximately caused by the departures and negligence of the Defendant herein resulting in lost wages and lost earning capacity. The injuries and disabilities listed herein has caused Plaintiff to be confined to the hospital and/or home so that she cannot engage in her usual employment.

42.     That as a result of the negligence and departures of the Defendant, its agents, servants and/or employees, whether taken singularly or in combination, the Plaintiff Dolores Alberto was caused to suffer economic damages, both in the past and continuing into the future, actually and proximately caused by the departures and negligence of the Defendant herein resulting in out-of-pocket expenses for assistive devices such as incontinence pads, adult diapers, and transportation to medical visits.

43.     That the injuries and damages sustained by Plaintiff were caused solely by the torts of the Defendant, without any negligence on the part of any other person contributing thereto.

## AS FOR A SECOND CAUSE OF ACTION:  LACK OF INFORMED CONSENT
## PURSUANT TO NEW YORK PUBLIC HEALTH LAW §2805-d

44.     Plaintiff incorporates herein the allegations in paragraphs 1 through 43 as if set out in full.

45.     That at all times mentioned herein, Defendant United States of America, by and through its agents, servants and employees, both actual and ostensible, specifically Ernesto Rodriguez-Dumont, M.D., undertook to attend and provide gynecology, surgery and general medical services to Plaintiff Dolores Alberto, beginning on or about May 12, 2016, and continuing thereafter; and, had a non-delegable duty to inform the Plaintiff of all known risks associated with the performance of a laparoscopic total hysterectomy.

46.     That at all times mentioned herein, Defendant United States of America, by and through its agents, servants and employees, both actual and ostensible, specifically Ernesto Rodriguez-Dumont, M.D., was negligent, and departed from standards of good and accepted gynecology, surgery and general medical practice, in its care and treatment of Plaintiff Dolores Alberto by the following:

      1)     Failing to advise the Plaintiff of the known risk of ureter transection and injury associated with laparoscopic total hysterectomy.

Had Plaintiff been informed of the known risk of ureter transection and injury associated with laparoscopic total hysterectomy, and the potential damages as listed below, she would not have consented to such procedure.

47.     Under the laws of the State of New York, a private person would be liable to Plaintiff for these acts and/or omissions of medical malpractice.  Under 28 U.S.C. §2674, the United States of America is liable to Plaintiff for her damages resulting from the personal injuries delineated below.

48.     That as a result of the negligence and departures of the Defendant,  its agents, servants and/or employees, whether taken singularly or in combination, the Plaintiff Dolores Alberto was caused to sustain serious, severe and permanent personal injuries, specifically the following: transected ureter; hydronephrosis; hydroureter; pelvic abscess; pyelonephritis; recurrent urinary tract infections; recurrent *Klebsiella* infections; recurrent vaginal drainage; recurrent gastro-intestinal distress due to various medications; recurrent fevers; recurrent cystitis; need for medications not otherwise indicated including multiple antibiotics and narcotic pain medications; need for multiple surgeries not otherwise indicated including ureter re-implantation, cystoscopies, ureteroscopies, retrograde pyelogram(s) and ureteral stentings; need for nephrostomy not otherwise indicated; need for foley catheterization not otherwise indicated; need for multiple imaging studies not otherwise indicated; need for therapies not otherwise indicated; permanent chronic pain both in the past and continuing into the future; permanent suffering both in the past and continuing into the future; permanent scarring and disfigurement; permanent chronic mental anguish, embarrassment and loss of personal dignity both in the past and continuing into the future; permanent disability both in the past and continuing into the future; permanent need for assistance with activities of daily living both in the past and continuing into the future; permanent loss of enjoyment of life both in the past and continuing into the future; permanent sexual dysfunction and difficulty in life both in the past and continuing into the future; permanent painful and/or burning urination both in the past and continuing into the future; permanent incontinence and urinary urgency both in the past and continuing into the future; and permanent sleep dysfunction due to pain and incontinence both in the past and continuing into the future.

49.     That as a result of the negligence and departures of the Defendant,  its agents, servants

and/or employees, whether taken singularly or in combination, the Plaintiff Dolores Alberto was caused to suffered economic damages, both in the past and continuing into the future, actually and proximately caused by the departures and negligence of the Defendant herein resulting in lien(s) (equitable or legal) and/or a "Right of Recovery" by private or governmental health insurance programs that paid for medical care on  behalf of Plaintiff for injuries caused by the Defendants herein; specifically New York State Medicaid.

50.     That as a result of the negligence and departures of the Defendant, its agents, servants and/or employees, whether taken singularly or in combination, the Plaintiff Dolores Alberto was caused to suffer economic damages, both in the past and continuing into the future, actually and proximately caused by the departures and negligence of the Defendant herein resulting in lost wages and lost earning capacity. The injuries and disabilities listed herein has caused Plaintiff to be confined to the hospital and/or home so that she cannot engage in her usual employment.

51.     That as a result of the negligence and departures of the Defendant, its agents, servants and/or employees, whether taken singularly or in combination, the Plaintiff Dolores Alberto was caused to suffer economic damages, both in the past and continuing into the future, actually and proximately caused by the departures and negligence of the Defendant herein resulting in out-of-pocket expenses for assistive devices such as incontinence pads, adult diapers, and transportation to medical visits.

52.     That the injuries and damages sustained by Plaintiff were caused solely by the torts of the Defendant, without any negligence on the part of any other person contributing thereto.


## STATEMENT REGARDING EXCEPTIONS IN NEW YORK STATE CPLR ARTICLE 1602

53.     One or more of the exceptions in CPLR §1602, including but not limited to subsection 2

(iv) and 7 are applicable to all causes of action and defendants are jointly and severally liable

with all other tortfeasors whether parties to this action or not.

**WHEREFORE,** Plaintiff demands judgment against the Defendant for actual damages

on each of the causes of action not to exceed $5,000,000.00, with interest, costs and

disbursements as permitted by law, and such further relief as justice demands.

Dated: New York, New York
           August 29, 2017

Your, etc.,

WILLIAM SCHWITZER & ASSOCIATES, P.C.
By:  Howard  Cohen (HC7640)
Attorneys for Plaintiff
820 2nd Avenue, 10th Floor
New York, New York 10017

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DOLORES ALBERTO

                              Plaintiff,

              -against-                                    CERTIFICATE OF MERIT

THE UNITED STATES OF AMERICA

STATE OF NEW YORK )
                                    ss.:
COUNTY OF NEW YORK)

      Howard R. Cohen, an attorney duly admitted to practice before the courts of the State of New York, deposes and says:

      1.  That I am an associate of the law firm of William Schwitzer & Associates, P.C., attorneys of record for the plaintiff in the above-captioned matter. I am fully familiar with the facts and circumstances of this matter by virtue of the file maintained by my office.

      2.  That I have reviewed the facts of the case with a physician who is duly licensed to practice medicine and who, I believe, is knowledgeable in the relevant issues involved in the case.

      3.  As a result of the aforementioned review, I have concluded that there is a reasonable basis for the commencement of this malpractice action.

Dated:  New York, New York
        August 29, 2017

                                        Howard R. Cohen (HC7640)